UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RYAN ODOM, | No. 2:13-cv-01503 KJM AC P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| NILOOFAR FAKADI, | |
| Defendants. | |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis in this action filed pursuant to 42 U.S.C. § 1983.  The court currently has before it defendant's motion for summary judgment based on defendants claim that she was not deliberately indifferent to plaintiff's serious medical need.  ECF No. 21.  Plaintiff has filed a response (ECF No. 29) and defendant has replied (ECF No. 27).

I. Plaintiff's Allegations

Plaintiff asserts that defendant Fadaki violated her rights under the Eighth Amendment when Fadaki failed to provide appropriate treatment for her osteoarthritis.  ECF No. 1 at 4-5. Specifically, plaintiff alleges that she has osteoarthritis in her left hip and that a lack of treatment over the past two years had led to osteoarthritis in her right hip, scoliosis, muscle cysts in her back, and severe, chronic pain in her back and legs.  Id. at 4.  Plaintiff further alleges that despite being aware of her pain issues, Fadaki has reduced her pain medication and refused to send her to

1

1  an orthopedic specialist. Id. at 4-5.

2  II.     Defendant's Summary Judgment Motion

3           Defendant moves for summary judgment on the grounds that she was not deliberately indifferent to plaintiff's serious medical need and that she provided appropriate treatment for plaintiff's osteoarthritis. ECF No. 21. Defendant was only employed at the Solano County Jail from April 10, 2013, through August 9, 2013. Defendant's Statement of Undisputed Material Facts ("DSUF") (ECF No. 21-1) at 1, ¶ 1. During that time, plaintiff's prescription for tramadol[1] reached the maximum dose and a decision was made to bring plaintiff's prescription back to a safe level and treat her pain with NSAIDs and prescribe tramadol as necessary for breakthrough pain. ECF No. 21-2 at 2. Defendant also argues that an orthopedic consult was not warranted at that time because good medical practice was to delay joint replacement surgery for as long as possible. Id.

13  III.    Plaintiff's Opposition

14          At the outset, the court notes that plaintiff has failed to comply with Federal Rule of Civil Procedure 56(c)(1)(A), which requires that "a party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . ." Plaintiff has also failed to file a separate document disputing defendants' statement of undisputed facts, as required by Local Rule 260(b).

            However, it is well-established that the pleadings of pro se litigants are held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "[p]ro se litigants must follow the same rules of

---

[1] Defendant's motion states that plaintiff was prescribed Toradol (ECF No. 21-1) and the Declaration of Dr. John Levin, M.D. indicates that tramadol, Toradol, and Ultram are the same medication (ECF No. 21-3 at 3, ¶ 6(F)). While Ultram is a brand name of the drug tramadol (http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0012486/), Toradol is a brand name of the drug ketorolac, an NSAID (http://www.ncbi.nlm.nih.gov/pubmedhealth/PMHT0001020/). Though the motion refers to plaintiff taking Toradol, the chronology set forth in Dr. Levin's declaration states that plaintiff was prescribed tramadol or Ultram, not Toradol. ECF No. 21-3 at 2-8, ¶ 6. Despite the poor copy quality of the records provided by defendant, the court's review of plaintiff's medical records (ECF No. 21-7) confirmed that plaintiff was prescribed tramadol or Ultram, not Toradol.

2

1    procedure that govern other litigants." King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987),

2    overruled on other grounds, Lacey v. Maricopa County, 693 F.3d 896 (9th Cir. 2012) (en banc).

3    However, the unrepresented prisoners' choice to proceed without counsel "is less than voluntary"

4    and they are subject to the "handicaps . . . detention necessarily imposes upon a litigant," such as

5    "limited access to legal materials" as well as "sources of proof." Jacobsen v. Filler, 790 F.2d

6    1362, 1364-65 & n.4 (9th Cir. 1986). Inmate litigants, therefore, should not be held to a standard

7    of "strict literalness" with respect to the requirements of the summary judgment rule. Id.

8        The court is mindful of the Ninth Circuit's more overarching caution in this context, as

9    noted above, that district courts are to "construe liberally motion papers and pleadings filed by

10   pro se inmates and . . . avoid applying summary judgment rules strictly." Thomas v. Ponder, 611

11   F.3d 1144, 1150 (9th Cir. 2010). Accordingly, the court considers the record before it in its

12   entirety despite plaintiff's failure to be in strict compliance with the applicable rules. However,

13   only those assertions in the opposition which have evidentiary support will be considered.

14       In opposition, plaintiff argues that defendant did not meet the applicable standard of care

15   because there was a "complete lack of medical care," including the denial of effective pain

16   medication and refusal to refer her to a specialist. ECF No. 29.

17   IV.   Undisputed Material Facts

18       Plaintiff has not disputed the accuracy of the medical records produced by defendant that

19   document the treatment that she received. The facts outlined in the timeline below are

20   undisputed.

21       •    June 22, 2011- November 13, 2013: Plaintiff was incarcerated at the Solano

22   County Jail. Plaintiff's Statement of Undisputed Material Facts (ECF No. 29-1) at 1, ¶ 1.

23       •    September 11, 2012: Plaintiff was examined by Dr. Douglas, who determined her

24   request for stronger analgesic medications was not justified. Declaration of Dr. John Levin, M.D.

25   ("Levin Decl.") at 3, ¶ 6(B). Dr. Douglas ordered prescriptions for 50 mg of Naprosyn twice a

26   day for thirty days and 50 mg of Tylenol twice a day for fourteen days. Id. at ¶ 6(C); ECF No.

27   21-7 at 3.

28       •    November 13, 2012: An x-ray of plaintiff's hip showed mild osteoarthritis in her

right hip and severe osteoarthritis in her left hip.  Levin Decl. at 3, ¶ 6(E).

- November 14, 2012:  Physician assistant ("P.A.") Jeffrey issued plaintiff her first prescription for tramadol.  Id. at ¶ 6(F).
- November 29, 2012:  P.A. Jeffrey adds an unspecified dosage of Tylenol to plaintiff's tramadol and Naprosyn in response to plaintiff's request for increased pain medication. Id. at 3, ¶ 6(G).
- January 25, 2013:  P.A. Jeffrey prescribes plaintiff fentanol in an unspecified dosage and 25 mg of Indocin twice a day for ten days after plaintiff complains that her back is hurting and she is not getting any additional pain medications.  Id. at 4, ¶ 6(I); ECF No. 21-7 at 11.
- February 1, 2013:  P.A. Jeffrey issues a prescription for 50 mg of tramadol for thirty days, issues a prescription for 500 mg if Tylenol twice a day for fourteen days, and increases plaintiff's prescription for Indocin to 50 mg twice a day for ten days.  Levin Decl. at 4, ¶ 6(J); ECF No. 21-7 at 13.
- March 1, 2013:  P.A. Jeffrey ordered 50 mg of Indocin twice a day and 50 mg of tramadol twice a day for thirty days after plaintiff complained that her pain medications had stopped.  Levin Decl. at 4, ¶ 6(L).
- March 25, 2013:  Plaintiff asks about her orthotic, which had been ordered but not allowed by custody and P.A. Jeffrey continues the 50 mg of Indocin twice a day for another thirty days.  Id. at ¶ 6(M).
- April 10, 2013:  Defendant begins her employment as a physician at the Solano County Jail.  DSUF at 1, ¶ 1.
- May 2, 2013:  P.A. Jeffrey completes a chronic care report, which was reviewed by defendant Fadaki, and prescribes 100 mg of tramadol in the morning for thirty days and 50 mg of tramadol in the evening for thirty days.  Levin Decl. at 4, ¶ 6(N).
- May 23, 2013:  Plaintiff's prescription for tramadol reached the maximum recommended dosage, 100 mg twice a day, after P.A. Jeffrey noted that she was walking with more of a limp.  Id. at 5, ¶ 6(P).

4

1       •       May 29, 2013: Defendant Fadaki issued a prescription for 500 mg of Naprosyn twice a day for ten days and placed plaintiff on the dental list after she was seen for a broken tooth. Id. at ¶ 6(Q). Defendant also ordered follow-up with the P.A. for plaintiff's pain medications. Id.

•       June 11, 2013: Plaintiff was seen by the P.A. and her prescription for Naprosyn was discontinued and replaced with a prescription for 50 mg of Indocin twice a day for fourteen days. Id. at ¶ 6(R).

•       June 18, 2013: P.A. Jeffrey continued plaintiff's prescriptions for 50 mg of Indocin twice a day and 100 mg of tramadol twice a day. Id. at ¶ 6(S).

•       June 24, 2013: P.A. Jeffrey reviewed plaintiff's medical chart and determined that her pain medication needed to be brought back to a safe level and that the doctor would be consulted on the possible changes. Id. at ¶ 6(T). Plaintiff's prescription for tramadol was reduced to 50 mg twice a day for thirty days, her prescription for Indocin was discontinued, and a prescription for 50 mg of Naprosyn twice a day for thirty days was added. Id. at 6, ¶ 6(U).

•       June 26, 2013: Plaintiff was seen by P.A. Jeffrey to discuss changes in her pain medication. Id. at 6, ¶ 6(V); ECF No. 21-7 at 27. She was advised that her case had been reviewed by the physicians, who felt that she could continue on Indocin instead of Naprosyn and that she did not require an orthopedic consult. Id. Plaintiff was concerned over how much Tramadol she could have and was reminded of a pain medication hoarding incident from the previous year. Id.; ECF No. 21-7 at 28-29. She was advised her case would be followed by a doctor going forward. Levin Decl. at 6, ¶ 6(V).

•       July 1, 2013: Plaintiff sees defendant for the first time regarding her hip pain. Id. at 2, ¶ 7; Levin Decl. at 6, ¶ 6(W); ECF No. 21-7 at 30. Plaintiff discussed her pain issues and desire to see a specialist with defendant. Id. Plaintiff was encouraged to increase her muscle strength and advised that she would receive alternating prescriptions for the NSAIDs Motrin and Naprosyn with prescriptions for Ultram when her pain was severe. Levin Decl. at 6-7, ¶ 6(W); ECF No. 21-7 at 30. Her range of motion in her right hip was normal while the range of motion in her left hip was reduced. Id. Plaintiff was advised that it was best to delay surgery because of

5

1   the life expectancy of the prosthesis and a shoe insert was ordered to compensate for plaintiff's
2   leg length discrepancy. Id.; ECF No. 21-7 at 31.

3   • July 8, 2013: Plaintiff was seen again by defendant for her hip and back pain.
4   Levin Decl. at 7, ¶ 6(X); ECF No. 21-7 at 32. Plaintiff was advised that the standard of care for
5   her condition was to use NSAIDs with Ultram only for temporary relief of breakthrough pain and
6   that continuing medications at high levels risked completely blocking the protective pain
7   response, leading to further damage. Id.; ECF No. 1 at 5; ECF No. 29 at 17. Defendant also
8   discussed following up with custody about approval for plaintiff's shoe wedge. Levin Decl. at 7,
9   ¶ 6(X); ECF No. 21-7 at 32.

10  • July 24, 2013: Defendant noted that plaintiff's shoe wedge was released to her.
11  Levin Decl. at 7, ¶ 6(Y).

12  • July 25, 2013: Plaintiff was seen by defendant and reported radiating pain and that
13  her Ultram prescription was scheduled to expire that day. Id. at 7-8, ¶ 6(Z); ECF No. 21-7 at 34.
14  Plaintiff's prescription for Ultram was extended by two weeks with concerns noted over
15  plaintiff's motivation and possible tolerance for the drug. Id. Plaintiff was also prescribed 500
16  mg of Robaxin twice a day for five days for a muscle spasm. Id.

17  • July 31, 2013: Plaintiff reported pain to defendant while being seen for a vaccine
18  and defendant ordered her Indocin increased to 75 mg twice a day for ten days followed by a
19  return to 50 mg twice a day for sixty days. Levin Decl. at 8, ¶ 6(AA).

20  • August 9, 2013: Defendant' employment as a physician at the Solano County Jail
21  ends. DSUF at 1, ¶ 1

22  • February 11, 2014: Plaintiff was seen by an orthopedist. ECF No. 29 at 33. The
23  doctor's recommendation was that it was best to treat plaintiff's condition conservatively because
24  of her age. Id. It was noted that total hip replacement would be necessary in the future, but that
25  at the time plaintiff needed a shoe lift, egg crate mattress, an extra pillow or blanket to keep
26  between her legs while laying down, and a soft shoe chrono. Id. Analgesics were to be
27  prescribed as needed. Id. Follow-up with the specialist was also to be as needed. Id.
28  ////

V.      Legal Standards for Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party "initially bears the burden of proving the absence of a genuine issue of material fact." In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admission, interrogatory answers, or other materials" or by showing that such materials "do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears the burden of proof at trial, "the moving party need only prove that there is an absence of evidence to support the nonmoving party's case." Oracle Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325); see also Fed. R. Civ. P. 56(c)(1)(B). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, . . . , is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or

1  admissible discovery material, in support of its contention that the dispute exists.  See Fed. R.
2  Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the
3  fact in contention is material, i.e., a fact that might affect the outcome of the suit under the
4  governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv.,
5  Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is
6  genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving
7  party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

8  In the endeavor to establish the existence of a factual dispute, the opposing party need not
9  establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual
10 dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at
11 trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce
12 the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"
13 Matsushita, 475 U.S. at 587 (citations omitted).

14 "In evaluating the evidence to determine whether there is a genuine issue of fact," the
15 court draws "all reasonable inferences supported by the evidence in favor of the non-moving
16 party."  Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011).  It is
17 the opposing party's obligation to produce a factual predicate from which the inference may be
18 drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),
19 aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing
20 party "must do more than simply show that there is some metaphysical doubt as to the material
21 facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the
22 nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation
23 omitted).

24 On May 1, 2014, the defendant served plaintiff with notice of the requirements for
25 opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF. No. 21.
26 See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (movant may provide notice) (en banc),
27 cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).
28 ////

VI. <u>Legal Standard Governing Eighth Amendment Claims</u>

In order to state a §1983 claim for violation of the Eighth Amendment[2] based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. <u>Wilson v. Seiter</u>, 501 U.S. 294, 299 (1991); <u>McKinney v. Anderson</u>, 959 F.2d 853, 854 (9th Cir. 1992) (on remand). The requisite state of mind for a medical claim is "deliberate indifference." <u>Hudson v. McMillian</u>, 503 U.S. 1, 5 (1992).

A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Indications that a prisoner has a serious need for medical treatment are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See, e.g., <u>Wood v. Housewright</u>, 900 F.2d 1332, 1337-41 (9th Cir. 1990) (citing cases); <u>Hunt v. Dental Dept.</u>, 865 F.2d 198, 200-01 (9th Cir. 1989). <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, <u>WMX Technologies v. Miller</u>, 104 F.3d 1133 (9th Cir. 1997) (en banc).

In <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994), the Supreme Court established a very demanding standard for "deliberate indifference." Negligence is insufficient. <u>Farmer</u>, 511 U.S.

---

[2] Defendant's motion for summary judgment refers to plaintiff as a pretrial detainee. ECF No. 21-2 at 4. However, defendant provides evidence, which plaintiff does not dispute, that defendant was a physician at the Solano County Jail only from April 10, 2013, through August 9, 2013. DSUF ¶ 1. Plaintiff's sentencing information shows that she was convicted in the Solano County Superior Court in case #VCR211543. ECF No. 29 at 55. A review of that court's docket for case #VCR211543 shows that a verdict was entered on March 8, 2013. http://courtconnect.solanocourts.com/courtconnect/ck_public_qry_doct.cp_dktrpt_frames?backto=D&case_id=VCR211543&begin_date=&end_date=. Because plaintiff had been convicted prior to the relevant time period, she was no longer entitled to the same rights as a pretrial detainee. <u>Resnick v. Hayes</u>, 213 F.3d 443, 448 (9th Cir. 2000) (inmate that has been convicted but not sentenced is not entitled to same rights as pretrial detainees). Plaintiff's claim is therefore based upon her rights under the Eighth Amendment.

at 835. Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to establish an Eighth Amendment violation. Id. at 836-37. It not enough that a reasonable person would have known of the risk or that a defendant should have known of the risk. Id. at 842. Rather, deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (internal citation omitted) (emphasis added). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citations omitted). A difference of opinion between an inmate and prison medical personnel—or between medical professionals—regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi, 391 F.3d at 1058.

VII.   Analysis

Although plaintiff alleges that she received deficient medical care for the two years leading up to the filing of the complaint (ECF No. 1 at 4), defendant has provided evidence that she was only employed at the Solano County Jail from April 10, 2013, through August 9, 2013 (DSUF at 1, ¶ 1). Plaintiff has not disputed the dates of defendant's employment and has not offered any evidence that would establish that defendant would have had any knowledge of plaintiff's condition or control over plaintiff's medical care outside the time she was employed at the Solano County Jail. To state a § 1983 claim against an individual defendant, a plaintiff must allege facts, not mere conclusions, showing a defendant's "personal involvement" in the alleged constitutional deprivation or a "causal connection" between a defendant's wrongful conduct and the alleged constitutional deprivation. Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998). State officials are not subject to suit under 42 U.S.C. § 1983 unless they are alleged to have played an affirmative part in depriving a plaintiff of his constitutional rights. Rizzo v. Goode, 423 U.S. 362, 377 (1976); King v. Atiyeh, 418 F.2d 565, 568 (9th Cir. 1987). Therefore the time period at issue in this case is the time defendant was employed by the Solano County Jail.

Defendant has produced the declaration of Dr. John Levin, M.D., who is board-certified in emergency medicine and has been licensed to practice in California since 1975. Levin Decl. at 1-2, ¶ 1. Dr. Levin has treated patients with chronic orthopedic joint pain, including hip pain, and that treatment has included the prescription of pain medication. Id. Dr. Levin opines that the treatment provided by defendant Fadaki, both in deciding to modify plaintiff's pain medication and denying an orthopedic consult, was consistent with the applicable medical standard of care. Id. at 8-9, ¶¶ 7-8. Dr. Levin declares that defendant Fadaki's decision to delay joint replacement surgery was good medical practice, because early replacement will usually result in repeat replacement surgery due to the limited life expectancy of the devices. Levin Decl. at 8, ¶ 7. He also declares that Fadaki's comments and recommendations related to pain medication were also within the standard of care because there is a risk of tolerance to the medication and masking of the protective pain response, which can result in additional injury. Levin Decl. at 8-9, ¶ 8. Additionally, good medical practice directs that pain medication be used at the lowest levels for the shortest periods possible, and in chronic pain cases such as plaintiff's, treatment with NSAIDS with only supplemental use of medications such as Ultram is within the standard of care. Id.

In opposition to summary judgment plaintiff argues that "[t]he declarations of the plaintiff and defendant are contradictory as to the correct standard of care being met and implemented by Dr. N. Fadaki." ECF No. 29 at 2. Plaintiff summarily argues that defendant should have sent her to an orthopedist and prescribed stronger pain medication because of her "severe pain symptoms and tolerance to pain medications," but does not address the substance of Dr. Levin's declaration or offer contrary medical evidence. ECF No. 29. Plaintiff has offered no evidence to establish that she would be qualified to testify as to the appropriate standard of care, and her argument appears to be based on excerpts from the American Medical Association Complete Medical Encyclopedia, which do not establish the standard of care. ECF No. 29; ECF No. 29-1.

    A.    Pain Medication

Defendant has provided expert testimony stating that taking into consideration plaintiff's condition, the dangers of developing a tolerance to the pain medication and masking the

11

protective pain response, as well as a past instance of pain medication hoarding, defendant's decision to modify plaintiff's pain medication and use tramadol only for instances of severe breakthrough pain was well within the appropriate standard of care. Levin Decl. at 8-9, ¶ 8. In her opposition, plaintiff offers no expert evidence that the reductions and changes in her pain medication were not the proper course of treatment. ECF No. 29. Considering that plaintiff had been taking the highest dose of tramadol allowed, in addition to Indocin and Naprosyn, and not only continued to complain of pain but claimed she was developing a tolerance to the medication, a jury could not find that defendant acted with deliberate indifference in reducing plaintiff's dose to safe levels. Defendant did not completely discontinue plaintiff's pain medication, and made modifications when faced with plaintiff's continued complaints of pain. Levin Decl. at 4-8, ¶¶ 6(M)-(AA).

The record also shows that aside from defendant's review of plaintiff's chronic care check-up on May 2, 2013 (id. at 4, ¶ 6(N)), up until June 24, 2013, the management of plaintiff's chronic hip pain was overseen by P.A. Jeffrey (id. at 3-5, ¶ 6(F)-(T)). It was not until P.A. Jeffrey determined that plaintiff's medications needed to be brought back to a safe level that defendant Fadaki was consulted and took over pain management care. Id. at 5-8, ¶¶ 6(T)-(AA). Once defendant Fadaki took over plaintiff's pain management, she saw plaintiff multiple times to discuss her condition and treatment and worked to get plaintiff's orthotic approved. Id.

Plaintiff provides copies of grievances submitted in July 2013 that address the treatment she received for her hip pain. ECF No. 29 at 9-28. However, there is no indication or allegation that defendant saw or personally responded to these grievances. Id.; ECF No.l 29-3 at 2-3, ¶¶ 6-10. Even if there were, the undisputed medical records show that plaintiff was seen and given treatment by defendant at least five times during the time she was pursuing her grievances. Levin Decl. at 6-8, ¶¶ 6(W)-(AA). The grievances also reflect that plaintiff herself acknowledged she was becoming tolerant to the medications and that defendant was advising her of the danger that high dosages would mask her protective pain response, leading to further injury. ECF No. 29 at 9-28.

Finally, plaintiff's contention that defendant should have continued prescribing tramadol

in particular, and in higher dosages, is no more than a difference of opinion regarding appropriate treatment. "A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not [without more] amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012), overruled on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1083 (9th Cir. 2014). To establish that a difference of opinion rises to the level of deliberate indifference, a prisoner must show that the defendant's chosen course of treatment was medically unacceptable and in conscious disregard of an excessive risk to plaintiff's health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996). No rational trier of fact could so find on the facts presented here.

Because defendant did not act with deliberate indifference to plaintiff's serious medical needs when she modified plaintiff's pain medications, defendant should be granted summary judgment as to plaintiff's Eighth Amendment claim regarding pain management.

### B. Referral to an Orthopedist

Plaintiff also alleges that defendant was deliberately indifferent in refusing to send plaintiff for a consultation with an orthopedist. ECF No. 1 at 4-5. Defendant has provided expert testimony that states that defendant's decision not to refer plaintiff to an orthopedist at that time was appropriate under the relevant standard of care, because it is good medical practice to try to delay joint replacement surgery due the limited life expectancy of the prosthesis. Levin Decl at 8, ¶ 7. Proper medical care includes delaying surgery if a patient can tolerate the activities of daily living with the assistance of appropriate levels of pain medication; early referral more often than not results in repeat replacement surgery. Id.

In her opposition, plaintiff offers no expert evidence that the decision not to send her to an orthopedist at the time she was under defendant's care was inappropriate. ECF No. 29. Plaintiff does provide a medical record that indicates that she was sent out for an orthopedic consultation approximately one and a half years after she was treated by defendant. Id. at 33. The orthopedist opined that due to plaintiff's age, it was best to treat her condition conservatively and while it stated hip replacement surgery would be necessary in the future, other treatment measures were prescribed. Id. The doctor ordered a left foot orthotic, an egg crate mattress, an extra pillow or

13

blanket, and a soft shoe chrono. Id. Pain medication was to be prescribed as necessary. Id. This evidence indicates that the treatment being provided by defendant was appropriate, as it was similar to the treatment plan outlined by the orthopedist. See Levin Decl. at 6-8, ¶¶ 6(W)-(AA). There is no evidence that defendant ignored or failed to respond to plaintiff's serious medical need by not sending her for an orthopedic consultation, and a jury could not find that defendant was deliberately indifferent by not sending plaintiff for an orthopedic consult.

VIII. Conclusion

Because there are no material factual disputes and no evidence from which a jury could find deliberate indifference, IT IS HEREBY RECOMMENDED that defendant Fadaki's motion for summary judgment (ECF No. 21) be granted and judgment be entered for the defendant.

These findings and recommendations are submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court, which shall be captioned "Objections to Magistrate Judge's Findings and Recommendations." **Due to exigencies in the court's calendar, no extensions of time will be granted.** A copy of any objections filed with the court shall also be served on all parties. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 9, 2015

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE